UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>BRANT LAKE SANITARY DISTRICT, A POLITICAL SUBDIVISION OF THE STATE OF SOUTH DAKOTA; and EXCEL UNDERGROUND, INC.,<br><br>Defendants. | 4:18-CV-04029-RAL<br><br>OPINION AND ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS |

Defendant Excel Underground, Inc. (Excel) obtained a $1,569,691.81 jury verdict against Defendant Brant Lake Sanitary District (Brant Lake) in state court. Brant Lake's insurer, Plaintiff Employers Mutual Casualty Company (EMCC), filed this case seeking a declaratory judgment that it has no duty to pay for Brant Lake's appeal of the verdict or to indemnify Brant Lake for any damages Brant Lake may owe Excel. Doc. 1. Excel and Brant Lake both counterclaimed against EMCC, Docs. 9, 35, and EMCC has now moved for judgment on the pleadings, Doc. 15. For the reasons explained below, this Court grants in part and denies in part EMCC's motion for judgment on the pleadings.

I.  **Facts Established in the Pleadings**

Brant Lake contracted with Excel to build a wastewater treatment system for Brant Lake's residents. A disagreement arose over construction of the system, so Excel and Brant Lake sued

1

each other in South Dakota state court. Doc. 1 at ¶¶ 11–12; Doc. 9 at ¶ 1; Doc. 35 at ¶ 4. Excel's complaint asserted two claims against Brant Lake, one seeking a declaratory judgment and one for breach of contract. Doc. 1-1 at 7–8. EMCC paid for Brant Lake's defense under a reservation of rights. Doc. 1 at ¶ 18; Doc. 35 at ¶ 10.

Brant Lake and Excel tried the case before a jury over nine days in January 2018. Doc. 1 at ¶ 13; Doc. 9 at ¶ 1; Doc. 35 at ¶ 6; Doc. 1-4 at 4. The trial judge instructed the jury on breach of contract but not on any other theories. Doc. 1-2. As relevant here, Instructions 16 and 17 explained the implied covenant of good faith and fair dealing contained in all contracts under South Dakota law. Doc. 1-2 at 17–18. Instruction 19 set forth the parties' positions, stating that "Excel claims that Brant Lake breached the contract and that Excel sustained damages as a result." Doc. 1-2 at 20. Next, Instruction 20 explained that if the jury found for Excel, it would need to calculate damages for "Excel's retainage;" for "other payments for work Excel did under the contract, and for work which Excel was prevented from doing as a result of Brant Lake Sanitary District's breach(es);" and for "Excel's lost profits." Doc. 1-2 at 21. Instruction 25 then addressed Excel's request for lost profits:

> Loss of profits may be recovered if the evidence shows with reasonable certainty both their occurrence and the extent thereof. The burden is on Excel to prove it is reasonably certain that the profits it claims would have been realized except for Brant Lake's conduct, and that the profits can be ascertained and measured, from evidence introduced, with reasonable certainty.

Doc. 1-2 at 26.

The jury found in Excel's favor and against Brant Lake. Doc. 1-3. Using a special verdict form, the jury awarded Excel $285,921.81 for "retainage," $483,770 for "other payments under the contract," and $800,000 for "its lost profits." Doc. 1-3 at 2. The trial court entered judgment

in Excel's favor on February 20, 2018. Doc. 1-3. Brant Lake filed an appeal, which is currently pending before the Supreme Court of South Dakota. Doc. 35 at ¶ 8.

Brant Lake sought coverage under the Linebacker Public Officials and Employment Practices Liability Policy (Policy) it has with EMCC, demanding that EMCC provide a supersedeas bond and legal counsel for its appeal[1] and that EMCC indemnify it for all damages it may owe Excel. Doc. 1 at ¶¶ 19–21; Doc. 35 at ¶¶ 11–13. Several sections of the Policy are relevant to Brant Lake's demands and EMCC's motion for judgment on the pleadings. In brief, the Policy covers a public official's "wrongful act" but excludes coverage for "contractual liability." Section I.1. of the Policy describes the coverage provided:

> a. Public Officials Liability
> We will pay for "defense expense(s)" and/or those sums that the insured becomes legally obligated to pay as "damages" because of a "public official's wrongful act" rendered in discharging duties on behalf of the insured named in the Declarations.

Doc. 1-5 at 1.[2] The Policy's definition of a "public official's wrongful act" reads:

> b. "Public official's wrongful act" shall mean any of the following:
> (1) Actual or alleged errors;
> (2) Misstatement or misleading statement;
> (3) Act, omission, neglect, or breach of duty by an insured
> in the discharge of "organizational" duties. "Public Officials Wrongful Act(s)" does not include an "employment wrongful act."

Doc. 1-5 at 8.

---

[1]During the motion hearing before this Court, the parties advised that EMCC has continued paying Brant Lake's legal fees on appeal under a reservation of rights. See also Doc. 1 at ¶ 20; Doc. 35 at ¶ 12.
[2]The Policy defines "defense expenses" as "sums payable to others for investigation, litigation, negotiation, or settlement of any claim which we deem expedient. 'Defense expenses' do not include our own internal company claim adjustment expenses, or any plaintiff/claimant attorney's fee/expenses." Doc. 1-5 at 7. The Policy defines "damages" in relevant part as "those amounts that the insured becomes legally obligated to pay for claims arising out of a 'wrongful act' to which this insurance applies." Doc. 1-5 at 7.

3

Section I.5. of the Policy contains the exclusion for "contractual liability" (Contractual Liability Exclusion):

> 5. Exclusions – Coverage A and Coverage B
>
> Each of the following exclusions is an absolute exclusion with no duty to defend or pay "damages" unless otherwise indicated. If both an absolute exclusion and an exclusion with a duty to defend apply, coverage for "defense expenses" is excluded and we have no duty to defend.
> This insurance does not apply to:
>
> . . . .
>
> d. Contractual Liability
> (1) Amounts actually or allegedly due under the terms of a contract;
> (2) Failure, refusal, or inability of the insured to enter into, renew or perform any contract or agreement. Exclusion 5.d. (2) applies to Coverage A only; or
> (3) The procurement of goods and/or services, including, but not limited to construction, architect, or engineering, contracts or agreements.
> We will defend a claim under Exclusion 5.d., but will have no obligation to pay "damages".

Doc. 1-5 at 2–3.

The Policy also limits EMCC's obligation to pay "defense expenses":

> 3. Defense and "Defense Expenses"
> a. With regard to any claim we defend:
>
> . . . .
>
> (4) Our obligation to pay further "defense expenses" ends after the first judgment has been entered except for appeals of such judgment made by the claimant.

Doc. 1-5 at 1.

EMCC asked this Court to declare that EMCC's duty to defend Brant Lake ended on February 20, 2018, when the state court entered judgment against Brant Lake, that EMCC need not pay for the supersedeas bond, and that the Contractual Liability Exclusion excludes coverage for Excel's verdict against Brant Lake. Doc. 1. Excel responded with a four-count counterclaim, alleging that the Policy covers the $800,000 in lost profits (Count 1) as well as the decisions by Brant Lake's board members allegedly to hire an underinsured engineer for the sewer project

4

(Count 2), overpay the engineer by hundreds of thousands of dollars (Count 3), and enter into an "illegal . . . completion contract" with another contractor (Count 4). Doc. 9. Brant Lake also filed a counterclaim asserting that the Policy covers the $800,000 in lost profits. Doc. 35. EMCC then moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).[3] Doc. 15. Among other things, EMCC argued that Excel lacks standing to bring Counts 2, 3, and 4 of its counterclaim. Both Defendants resisted EMCC's motion. One of Brant Lake's arguments is that issues of indemnity are not ripe yet and the only issue properly before this Court is EMCC's duty to defend through the appeal. All parties participated in a motion hearing this Court held in early February 2019.

In sum, the parties' pleadings framed the following issues: (1) whether Excel has standing to bring Counts 2, 3, and 4 of its counterclaim; (2) whether issues of indemnity are ripe for adjudication; (3) whether the Policy requires EMCC to pay for the supersedeas bond; (4) whether EMCC's duty to defend Brant Lake ended with the February 20, 2018 judgment; (5) whether the Contractual Liability Exclusion applies to the award for "retainage" and for "other payments under the contract"; and (6) whether the Contractual Liability Exclusion applies to the award for lost profits.

## II. Legal Standards

### A. Judgment on the pleadings standard.

On a motion for judgment on the pleadings under Rule 12(c), courts take the factual allegations pled by the nonmoving party as true and construe all inferences in the nonmoving party's favor, but need not accept the nonmoving party's legal conclusions. Official Comm. of

---

[3]Brant Lake filed an amended answer and its counterclaim after EMCC moved for judgment on the pleadings. In an earlier opinion, this Court deemed EMCC's motion for judgment on the pleadings to apply to Brant Lake's amended answer and counterclaim. Doc. 34.

5

Unsecured Creditors v. Archdiocese of St. Paul & Minneapolis (In re Archdiocese of St. Paul & Minneapolis), 888 F.3d 944, 950 (8th Cir. 2018); Schnuck Mkts., Inc. v. First Data Merch. Servs. Corp., 852 F.3d 732, 739 (8th Cir. 2017). Courts will grant judgment on the pleadings "only if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

Although courts generally must ignore matters outside the pleadings when analyzing a Rule 12(c) motion, they "may consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings." Saterdalen v. Spencer, 725 F.3d 838, 841 (8th Cir. 2013) (cleaned up). Here, EMCC attached five documents to its complaint, namely Excel's state-court complaint, the jury instructions, the verdict form, the judgment, and the Policy. Docs. 1-1 through 1-5. The Policy was attached to the complaint and is embraced by the pleadings and Excel's complaint, the jury instructions, the verdict form, and the judgment are matters of public record. See Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (considering underlying state court decisions because they were matters of public record). Brant Lake as part of its opposition to EMCC's motion filed portions of the trial transcript. Docs. 26-1 through 26-4. Depending on the circumstances, courts may consider trial transcripts when ruling on a Rule 12(c) motion. Porous Media Corp., 186 F.3d at 1079. No party questions the authenticity of the documents concerning the state case or the propriety of the Court considering such materials. This Court may consider the documents the parties submitted without converting EMCC's motion into one for summary judgment.

**B. South Dakota law on insurance coverage issues.**

The parties agree that South Dakota law governs in this diversity action. Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d 857, 861 (8th Cir. 2012). Interpretation of an insurance policy presents a question of law for the court. Swenson v. State Farm Fire & Cas. Co., 891 F. Supp. 2d 1101, 1107 (D.S.D. 2012). When determining whether a policy provides coverage, courts in South Dakota read the contract as a whole and give unambiguous language its plain and ordinary meaning. Culhane v. W. Nat'l Mut. Ins. Co., 704 N.W.2d 287, 293 (S.D. 2005); Pete Lien & Sons, Inc. v. First Am. Title Ins. Co., 478 N.W.2d 824, 827 (S.D. 1991). If the policy's language is "fairly susceptible to two constructions," an ambiguity exists, and it will be construed against the insurer. Am. Family Mut. Ins. Co. v. Elliot, 523 N.W.2d 100, 102 (S.D. 1994) (cleaned up). Nevertheless, courts will not create coverage by reading an ambiguity into the plain language of a policy. Culhane, 704 N.W.2d at 293. Instead, courts "consider the policy according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending its operation." Id. (cleaned up). South Dakota law provides that exclusions in an insurance policy are strictly construed, and the insurer bears the burden of showing that the exclusion applies. Owners Ins. Co. v. Tibke Constr., Inc., 901 N.W.2d 80, 83 (S.D. 2017); Novak v. State Farm Mut. Auto. Ins. Co., 293 N.W.2d 452, 455 (S.D. 1980). EMCC can meet that burden by showing that Brant Lake's claim for indemnity "*clearly* falls outside of policy coverage." Owners Ins. Co., 901 N.W.2d at 83 (cleaned up).

III. Analysis

**A. Excel lacks standing to bring Counts 2, 3, and 4 of its counterclaim.**

Counts 2, 3, and 4 of Excel's counterclaim allege that Brant Lake's board members hired an underinsured engineer for the sewer project (Count 2), overpaid the engineer by hundreds of thousands of dollars (Count 3), and entered into an "illegal . . . completion contract" with another

7

contractor (Count 4). Doc. 9 at ¶¶ 20–48. Excel seeks a declaration that the Policy provides coverage for these acts. EMCC argued for judgment on the pleadings dismissing Counts 2, 3, and 4 in its initial brief, contending that these counts, which are unrelated to the underlying verdict, do not present a case or controversy and that res judicata bars Excel from bringing additional claims against Brant Lake. Doc. 16 at 18–22. Rather than responding to EMCC's case-or-controversy argument, Excel argued that res judicata did not bar Counts 2, 3, and 4 because the counts "are claims that [Brant Lake] as an entity holds against its own board members." Doc. 27 at 16. EMCC argued in its reply that Excel does not have standing to assert claims belonging to Brant Lake. Doc. 28. Excel filed a surreply, but did not address EMCC's standing argument. Doc. 31.

A party suing in federal court must satisfy both the constitutional and prudential requirements for standing. Warth v. Seldin, 422 U.S. 490, 498–99 (1975). One of the prudential standing requirements is that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Id. at 499. The purpose of this requirement is to avoid adjudicating rights a third party "may not wish to assert" and to ensure effective advocacy. Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 80 (1978). Litigants have nevertheless been allowed to bring claims for third parties when the litigant has suffered "an injury in fact," has a close relationship to the third party, and there is "some hindrance to the third party's ability to protect his or her own interests." Powers v. Ohio, 499 U.S. 400, 410–11 (1991) (cleaned up). As the party asserting that federal jurisdiction exists over Counts 2, 3, and 4, Excel has the burden of showing that it meets the prudential standing requirements. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

The allegations in Excel's answer and counterclaim do not plausibly suggest that Excel has standing to bring Counts 2, 3, and 4. Excel admits that the claims in Counts 2, 3, and 4 belong to

Brant Lake rather than to Excel itself and that any money recovered under these claims is "not owed *directly* to Excel." Doc. 27 at 16. What Excel is seeking then, is a declaration about what EMCC must do for Brant Lake, not about what EMCC must do for Excel. Excel has not pleaded any facts, cited any case, or made any argument suggesting that it has standing to bring claims that not only belong to Brant Lake, but also that Brant Lake may not wish to bring at all and indeed has not raised. Instead, Excel simply argues that resolving Counts 2, 3, and 4 "in conjunction with" the other issues in this case "would be efficient because the discovery[4] and facts will overlap." Doc. 27 at 16–17. But while one purpose of the Declaratory Judgment Act is "to facilitate efficient outcomes," Med. Assurance Co. v. Hellman, 610 F.3d 371, 381 (7th Cir. 2010), the Act does not relax the prudential standing rule requiring litigants to assert their own rights, Edgewood Manor Apartment Homes, LLC, v. RSUI Indem. Co., 733 F.3d 761, 772 n.2 (7th Cir. 2013) (rejecting an argument that the Declaratory Judgment Act modified the rule prohibiting parties from asserting the rights of others). Counts 2, 3, and 4 of Excel's counterclaim are dismissed for lack of prudential standing.

**B. Issues of indemnity are properly before this Court.**

Brant Lake argues that the indemnity issues raised in this declaratory judgment case are not ripe until the Supreme Court of South Dakota resolves the appeal of the jury verdict. Citing two state cases and two district court cases from outside the Eighth Circuit, Brant Lake contends that "a declaratory judgment action brought to determine an insurer's duty to indemnify an insured is not ripe for adjudication until an insured becomes legally obligated to pay the damages in the

---

[4]On the one issue that remains following entry of this Opinion and Order, discovery appears to be unnecessary.

9

underlying action." Doc. 25 at 2–3 (quoting Gregory v. Farmers Auto. Ins. Ass'n, 910 N.E.2d 763, 765 (Ill. App. Ct. 2009)).

Courts may not grant relief under the Declaratory Judgment Act unless an "actual controversy" exists between the parties. 28 U.S.C. § 2201. This "actual controversy" requirement is identical to the case and controversy requirement embodied in Article III of the Constitution. Cty. of Mille Lacs v. Benjamin, 361 F.3d 460, 463 (8th Cir. 2004). Article III, in turn, requires that there be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941). As with any other action in federal court, an action for declaratory relief must be ripe for federal jurisdiction to exist. Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 242 (1952); Gopher Oil Co. v. Bunker, 84 F.3d 1047, 1050 (8th Cir. 1996).

The parties' disagreement over indemnity presents an actual controversy that is ripe for adjudication. Brant Lake and Excel dispute EMCC's claim that the Policy does not cover any part of the jury verdict. The parties have adverse legal positions because Brant Lake and Excel want EMCC to pay for the verdict while EMCC wants to avoid doing so. This dispute is of "sufficient immediacy" as the jury has found Brant Lake liable for $1,569,691.81 in damages, judgment has been entered against Brant Lake, and Brant Lake has demanded that EMCC indemnify it for any damages owed Excel once final judgment is entered. Contrary to Brant Lake's argument, courts can decide questions of indemnity despite the insured's liability for damages being uncertain. In Scottsdale Insurance Co. v. Universal Crop Protection Alliance, LLC, 620 F.3d 926 (8th Cir. 2010), for instance, the Eighth Circuit resolved a dispute over indemnity even though the state-court litigation to determine the insured's liability was still pending. Id. at 933–35. "In the

insurance policy coverage context," the Eighth Circuit explained, "a declaratory judgment action is ripe irrespective of whether the underlying litigation is ongoing or resolved." Id. at 934; see also Md. Cas. Co., 312 U.S. at 272–74 (holding that an actual controversy existed when an insurer sought a declaratory judgment that it had no duty to defend or indemnify its insured in a state court action that had not yet proceeded to judgment); 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2757 (4th ed.) (explaining that courts have found a "sufficient controversy" when an insurer seeks a declaration on indemnity even though the insured's liability is uncertain). Under Scottsdale, then, Brant Lake's appeal of the judgment does not render a decision on indemnity premature.

### C. The supersedeas bond issue is moot.

EMCC initially asked for a declaration that it need not provide a supersedeas bond to facilitate Brant Lake's appeal. Since EMCC filed this declaratory judgment action, however, the state trial judge ruled that Brant Lake did not have to post a supersedeas bond in connection with its appeal. Doc. 16 at 4 n.1; Doc. 16-1. All parties agreed at the hearing that the supersedeas bond issue is now moot.

### D. EMCC has no duty to defend Brant Lake beyond the entry of judgment.

EMCC requests judgment on the pleadings declaring that its duty to defend Brant Lake ended on February 20, 2018, when the state court entered judgment in favor of Excel and against Brant Lake. Brant Lake did not respond to this request in its brief. Again, the Policy sets a limit on EMCC's duty to pay "defense expenses":

> With regard to any claim we defend:
> . . . .
> (4) Our obligation to pay further "defense expenses" ends after the first judgment has been entered except for appeals of such judgment made by the claimant.

Doc. 1-5 at 1. Here, the first judgment was entered on February 20, 2018. Although Brant Lake has appealed the judgment, the "claimant," Excel, has not. Under the plain language of the Policy, EMCC's duty to pay Brant Lake's "defense expenses" ended on February 20, 2018. EMCC is entitled to judgment on the pleadings on this issue.

**E. The policy excludes coverage for "retainage" and "other payments under the contract."**

The jury awarded Excel $285,921.81 for "retainage" and $483,770 for "other payments under the contract." Doc. 1-3 at 2. EMCC argues that subsection (1) of the Contractual Liability Exclusion excludes coverage for these damages. That subsection provides that the Policy does not cover "[a]mounts actually or allegedly due under the terms of a contract." Doc. 1-5 at 3. Brant Lake's brief did not address EMCC's argument, and its only response at the hearing was that issues of indemnity are not yet ripe. Excel at the hearing argued only that the separate "lost profits" award was covered by the Policy.

The Policy does not define the phrase "due under the terms of a contract," so this Court looks to the dictionary to determine the "plain and ordinary meaning" of these words. W. Nat'l Mut. Ins. Co. v. TSP, Inc., 904 N.W.2d 52, 57 (S.D. 2017) (cleaned up). The word "due" means "[o]wing or payable," while the word "owing" simply means "yet to be paid." Black's Law Dictionary (10th ed. 2014). In this context, the word "under" means "[i]n accordance with," The New Shorter Oxford English Dictionary 3470 (3d ed. 1993), and the word "terms" means "conditions" or the "provisions that determine the nature and scope of an agreement," Merriam-Webster's Collegiate Dictionary 1289 (11th ed. 2014).

Subsection (1) of the Contractual Liability Exclusion clearly applies to the jury's award of $483,770. After all, the verdict form stated that these damages were for "other payments under the contract," Doc. 1-3 at 2, and the jury instructions described this aspect of Excel's damages as being "[f]or other payments for work Excel did under the contract, and for work which Excel was

12

prevented from doing as a result of [Brant Lake's] breach(es)." Doc. 1-2 at 21. Although the contract between Excel and Brant Lake is not in the record, the verdict form and jury instructions establish that the $483,770 in damages was for money Brant Lake owed "in accordance with" the terms of that contract.

The jury instructions do not define "retainage," but under the general understanding of this word, the $285,921.81 awarded for "retainage" was also an amount Brant Lake owed under the contract. Courts have defined "retainage" as "a percentage of what one party to a construction contract owes the other, which is withheld to assure that all of the work under the contract has been satisfactorily completed and that all mechanic's liens have been released or expired." Herling v. Wyo. Mach. Co., 304 P.3d 951, 955 n.1 (Wyo. 2013). A treatise on construction law provides a similar definition:

> A common contract approach to reducing a contractee's risk that its contractor will fail to fully perform its contractual obligations is to withhold a percentage of the sums due until the work is substantially complete. This percentage is known as "retainage." Typical retainage amounts are 5 to 10% of the contract price.

3 Philip L. Bruner & Patrick J. O'Connor Jr., Bruner & O'Connor on Construction Law § 8:18 (2016 ed.) (footnotes omitted). These definitions are consistent with Excel's statement during trial that retainage means "work [Excel has] already done, but not yet been compensated for." Doc. 26-1 at 4. No party at the hearing offered any different explanation of the "retainage" award. EMCC has met its burden of showing that subsection (1) of the Contractual Liability Exclusion clearly applies to the jury's verdict for "retainage" and "other payments under the contract."

### F. The contractual liability exclusion and the $800,000 in "lost profits."

EMCC argues that subsection (2) of the Contractual Liability Exclusion excludes coverage for the jury award to Excel of $800,000 in lost profits. Brant Lake disagrees, arguing that the Contractual Liability Exclusion is inapplicable both because of the language of the Policy and

13

because the $800,000 in lost profits could only have been awarded under a tort theory, "perhaps as an action for interference with contractual relations." Doc. 25 at 16. Excel contends that EMCC has failed to show that the Contractual Liability Exclusion clearly applies and that a reasonable interpretation of the exclusion, considering the nature of the risks insured, would afford coverage for the $800,000 in lost profits.

EMCC's pleadings and the exhibits attached thereto do not provide enough information for this Court to definitively rule that subsection (2) of the Contractual Liability Exclusion excludes coverage for the lost profits jury award. Subsection (2) states that the Policy "does not apply to . . . **(2)** Failure, refusal, or inability of the insured to enter into, renew or perform any contract or agreement." Doc. 1-5 at 2–3. Although EMCC argues that the lost profits clearly fall within subsection (2), its pleadings did not explain what the lost profits were for or how Excel was able to recover them. Indeed, the nature of the $800,000 in lost profits would have remained a mystery to this Court had Brant Lake not filed a portion of the trial transcript.[5] The trial transcript indicates that Brant Lake not only terminated Excel from the wastewater treatment system project, but also made a claim on Excel's performance bond. Doc. 26-1 at 2–3.[6] Excel's theory at trial appears to have been that Brant Lake's claim on its bond impaired Excel's ability to secure bonds for other projects, which in turn caused Excel to bid only small projects, to lose out on large and more profitable projects, and to thereby suffer lost profits. Doc. 26-1 at 4, 7–8, 12–16, 21–25; Doc. 26-2 at 6; Doc. 26-3 at 8; Doc. 26-4 at 2–3. In its brief to this Court, Excel asserts that it pursued the lost profits under a contract theory because the performance bond was incorporated into the

---

[5]Brant Lake briefly mentioned the basis of the jury's $800,000 lost profits award in its Counterclaim, Doc. 35 at ¶¶ 22–23, but the submission of the trial excerpts first informed the Court of the evidence and the calculation of the amount.
[6]This Court is not making any factual findings about Excel's claim for lost profits.

construction contract between Excel and Brant Lake. Doc. 27 at 8. According to Excel, it alleged that Brant Lake "breached the duty of good faith and fair dealing implied within the bond and within its contract, generally, by using it wrongfully and for an improper purpose, beyond the scope of their agreement." Doc. 27 at 8. The construction contract and performance bond are not part of this Court's record at this time, and Brant Lake has filed only a small portion of the transcript from the nine-day jury trial. Based on the limited record at this time, this Court cannot determine on a motion for judgment on the pleadings whether the jury awarded the lost profits because of Brant Lake's "[f]ailure, refusal, or inability . . . to enter into, renew or perform any contract or agreement."

EMCC maintains that this Court need only look to the jury instructions, the verdict form, and Excel's complaint to resolve the issue of coverage for the lost profits award. To be sure, these documents show that it is at least fairly debatable whether EMCC must indemnify Brant Lake for the lost profits. Yet these documents do not show that EMCC is entitled to judgment on the pleadings. After all, courts grant motions for judgment on the pleadings only when "it is clear that the merits of the controversy can be fairly and fully decided in this summary manner." 5C Charles Alan Wright et al., Federal Practice and Procedure § 1369 (3d ed.). Here, it is not clear that this Court can decide whether the exclusion applies to this lost profits award on the current record. Cf. St. Paul Fire & Marine Ins. Co. v. Engelmann, 639 N.W.2d 192, 198–99 (S.D. 2002) (considering testimony from the underlying trial when deciding whether the insurer had a duty to indemnify); Klatt v. Cont'l Ins. Co., 409 N.W.2d 366, 370 (S.D. 1987) (considering complaint, jury instructions, verdict, trial testimony, and the trial court's findings of fact when deciding whether an insurance policy covered damages).

To recap, EMCC is entitled to judgment on the pleadings on Counts 2, 3, and 4 of Excel's counterclaim, a declaration that it has no duty to defend Brant Lake beyond the February 20, 2018 judgment, and a declaration that the Policy does not cover the jury's award of damages for "retainage" and "other payments under the contract." This Court denies EMCC's motion for judgment on the pleadings as to the lost profits because that issue, though likely a question of law, ought to be decided on a more developed record, perhaps through cross motions for summary judgment.

### IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that EMCC's Motion for Judgment on the Pleadings, Doc. 15, is granted in part and denied in part. EMCC's motion is granted on Counts 2, 3, and 4 of Excel's counterclaim, for a declaratory judgment that EMCC's duty to defend Brant Lake ended on February 20, 2018, and for a declaratory judgment that EMCC has no obligation to indemnify Brant Lake for the jury's award of damages for "retainage" and "other payments under the contract." EMCC's motion is denied as to its request for a declaratory judgment on the lost profits award not being covered. EMCC's motion for a declaratory judgment on not having to post a supersedeas bond is denied as moot.

DATED this 12th day of February, 2018.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE