UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>BRANT LAKE SANITARY DISTRICT, A POLITICAL SUBDIVISION OF THE STATE OF SOUTH DAKOTA; and EXCEL UNDERGROUND, INC.,<br><br>Defendants. | 4:18-CV-04029-RAL<br><br><br>OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

Defendant Excel Underground, Inc. (Excel) obtained a $1,569,691.81 jury verdict against Defendant Brant Lake Sanitary District (Brant Lake) in state court. After the jury verdict, Brant Lake's insurer, Plaintiff Employers Mutual Casualty Company (EMCC), filed this case seeking a declaratory judgment that it has no duty to pay for Brant Lake's appeal of the verdict or to indemnify Brant Lake for any damages Brant Lake owed Excel. Doc. 1. Excel and Brant Lake both counterclaimed against EMCC. Docs. 9, 35. EMCC moved for judgment on the pleadings, Doc. 15, which this Court granted in part and denied in part. Doc. 39. EMCC and Brant Lake now have filed cross-motions for summary judgment to submit for decision the lone remaining issue of coverage for the portion of the jury verdict awarding $800,000 for Excel's lost profits. Docs. 42, 46.

I.  **Facts Not Subject to Genuine Dispute**

1

This case concerns coverage under a Linebacker Public Officials and Employment Practices Liability Policy (the Policy) issued by EMCC to its insured Brant Lake. Brant Lake and Excel contend that the Policy covers at least a portion of a jury award that Excel received against Brant Lake.

On May 30, 2012, Brant Lake contracted with Excel to build a wastewater system for Brant Lake and its residents. The wastewater system project aimed to replace septic tanks of approximately 220 homes around Brant Lake by connecting each home by pipelines and grinder stations to a sewage treatment lagoon. Doc. 44 at ¶ 6; Doc. 55 at ¶ 6. The contract between Brant Lake and Excel incorporated a performance bond issued by Granite Re, Inc. (Granite Re), which the contract required Excel to obtain. Doc. 44 at ¶ 4; Doc. 48 at ¶ 2; Doc. 55 at ¶ 4; Doc. 59 at ¶ 2; Doc. 62 at ¶ 2.

A series of disputes developed between Brant Lake and Excel over work on the wastewater system project. Doc. 44 at ¶¶ 7–18. Brant Lake retained monies from Excel and in January of 2014 terminated the contract while a portion of the wastewater project remained incomplete. Doc. 48 at ¶ 3; Doc. 59 at ¶ 3; Doc. 62 at ¶ 3. Brant Lake's attorney at the direction of Brant Lake sent the January 20, 2014 termination letter not only to Excel, but also to Granite Re. Doc. 44 at ¶ 21; Doc. 55 at ¶ 21. Brant Lake also made a claim on the performance bond issued by Granite Re. Doc. 48 at ¶ 4; Doc. 59 at ¶ 4; Doc. 62 at ¶ 4.

Brant Lake then sued Excel and Granite Re. Doc. 44 at ¶ 1; Doc. 55 at ¶ 1. Excel separately sued Brant Lake alleging two claims, one seeking a declaratory judgment and the other claiming breach of contract against Brant Lake. Doc. 1-1 at 7–8; Doc. 44 at ¶ 2; Doc. 48 at ¶ 5; Doc. 55 at ¶ 2; Doc. 59 at ¶ 5; Doc. 62 at ¶ 5. The cases were consolidated for trial in state court in Lake

County, South Dakota. EMCC provided defense counsel for Brant Lake to defend against Excel's claims, and Brant Lake's own counsel pressed Brant Lake's breach of contract claim against Excel.

The jury found in favor of Excel and against Brant Lake, awarding Excel a total of $1,569,691.81 in damages in three categories: $285,921.81 for "retainage;" $483,770 for "other payments under the contract;" and $800,000 for "lost profits." Doc. 44 at ¶ 3; Doc. 55 at ¶ 3. This Court in its Opinion and Order Granting in Part Motion for Judgment on the Pleadings, Doc. 39, ruled that the $285,921.81 awarded for amounts Brant Lake had retained from paying Excel and the $483,770 award for additional monies owed to Excel under the contract were excluded from coverage under Section I.5.d.(1) of the Policy excluding "[a]mounts actually or allegedly due under the terms of a contract." Doc. 1-5 at 2–3; see Doc. 39 at 12–13. This Court chose not to grant EMCC's motion for judgment on the pleadings regarding the $800,000 lost profits award because the "pleadings and the exhibits attached thereto do not provide enough information . . . to definitively rule that subsection (2) of the Contractual Liability Exclusion excludes coverage for the lost profits jury award." Doc. 39 at 14. The parties now have filed material from the state court case and trial thereof regarding Excel's claim and jury award for $800,000 of lost profits.

Brant Lake and Excel tried the case before a jury over nine days in January 2018. Doc. 1 at ¶ 13; Doc. 9 at ¶ 1; Doc. 35 at ¶ 6; Doc. 1-4 at 4. Excel sought lost profits from the date Brant Lake terminated the wastewater system contract through the date of trial. Doc. 44 at ¶ 19; Doc. 55 at ¶ 19. Excel presented testimony at trial that Brant Lake's claim on the Granite Re performance bond impaired Excel's ability to secure bonds for other projects, which in turn caused Excel to bid only small projects, to lose out on larger and more profitable projects, and thereby to suffer lost profits. Doc. 26-1 at 4, 7–8, 12–16, 21–25; Doc. 26-2 at 6; Doc. 26-3 at 8; Doc. 26-4 at 2–3. Excel's bonding agent testified that Brant Lake's termination of Excel's contract and claim

on the Granite Re performance bond prompted a "push hold" by bonding companies on Excel business pending resolution of the claim. Doc. 44 at ¶ 23; Doc. 55 at ¶ 23. Excel then had to resort to "quick bonds" without underwriting that carried smaller limits, and Excel had to use more than one bonding company at a time to increase its bonding limits. Doc. 44 at ¶ 23; Doc. 55 at ¶ 23. Excel's president testified that Excel consequently could not bid the same number and type of public construction projects in the aftermath of Brant Lake's termination of the contract and claim on the Granite Re bond. Doc. 44 at ¶ 24; Doc. 55 at ¶ 24. Based on testimony from Excel's president about work Excel lost because of the limits on Excel's bonding ability in the aftermath of Brant Lake's bond claim, a certified public accountant hired as Excel's damages expert testified that Excel's lost profits from 2014 to 2018 totaled $800,000. Doc. 44 at ¶¶ 26–27.

The trial judge instructed the jury on breach of contract but not on any other theories. Doc. 1-2. As relevant here, Instructions 16 and 17 explained the implied covenant of good faith and fair dealing contained in all contracts under South Dakota law. Doc. 1-2 at 17–18. Instruction 19 set forth the parties' positions, stating that "Excel claims that Brant Lake breached the contract and that Excel sustained damages as a result." Doc. 1-2 at 20. Next, Instruction 20 explained that if the jury found for Excel, it would need to calculate damages for "Excel's retainage;" for "other payments for work Excel did under the contract, and for work which Excel was prevented from doing as a result of Brant Lake Sanitary District's breach(es);" and for "Excel's lost profits." Doc. 1-2 at 21. Instruction 25 then addressed Excel's request for lost profits:

> Loss of profits may be recovered if the evidence shows with reasonable certainty both their occurrence and the extent thereof. The burden is on Excel to prove it is reasonably certain that the profits it claims would have been realized except for Brant Lake's conduct, and that the profits can be ascertained and measured, from evidence introduced, with reasonable certainty.

Doc. 1-2 at 26.

The trial court entered judgment based on the $1,569,691.81 jury verdict in Excel's favor on February 20, 2018. Doc. 1-3. Brant Lake filed an appeal, which is currently pending before the Supreme Court of South Dakota.[1] Doc. 35 at ¶ 8.

Several sections of the Policy are relevant to the remaining coverage issue regarding the $800,000 lost profits award. The Policy in short covers a "Public Official's wrongful act" but excludes coverage for "Contractual Liability." Section I.1. of the Policy describes the coverage provided:

> **a. Public Officials Liability**
> We will pay for "defense expense(s)" and/or those sums that the insured becomes legally obligated to pay as "damages" because of a "public official's wrongful act" rendered in discharging duties on behalf of the insured named in the Declarations.

Doc. 1-5 at 1. The Policy defines "damages" in relevant part as "those amounts that the insured becomes legally obligated to pay for claims arising out of a 'wrongful act' to which this insurance applies." Doc. 1-5 at 7. The Policy's definition of a "Public official's wrongful act" reads:

> **b. "Public official's wrongful act"** shall mean any of the following:
> (1) Actual or alleged errors;
> (2) Misstatement or misleading statement;
> (3) Act, omission, neglect, or breach of duty by an insured in the discharge of "organizational" duties. "Public Officials Wrongful Act(s)" does not include an "employment wrongful act."

Doc. 1-5 at 8. Thus, there could be coverage for a jury award for Brant Lake's wrongful acts if there is no applicable exclusion.

Section I.5. of the Policy contains the exclusion for "Contractual Liability" (Contractual Liability Exclusion):

> **5. Exclusions – Coverage A and Coverage B**

---

[1] Nothing in this Opinion and Order is intended to make any factual findings affecting the appeal to the Supreme Court of South Dakota or to address any of the issues on appeal in state court.

5

> Each of the following exclusions is an absolute exclusion with no duty to defend or pay "damages" unless otherwise indicated. If both an absolute exclusion and an exclusion with a duty to defend apply, coverage for "defense expenses" is excluded and we have no duty to defend.
> This insurance does not apply to:
>
> . . . .
>
> **d. Contractual Liability**
> (1) Amounts actually or allegedly due under the terms of a contract;
> (2) Failure, refusal, or inability of the insured to enter into, renew or perform any contract or agreement. Exclusion **5.d. (2)** applies to Coverage A[2] only; or
> (3) The procurement of goods and/or services, including, but not limited to construction, architect, or engineering, contracts or agreements.
> We will defend a claim under Exclusion **5.d.**, but will have no obligation to pay "damages".

Doc. 1-5 at 2–3.

This Court's Opinion and Order Granting in Part Motion for Judgment on the Pleadings, Doc. 39, together with agreements between EMCC and Brant Lake concerning the handling of the state court appeal, resolved many of the issues framed by EMCC's complaint and the counterclaims of Brant Lake and Excel. EMCC and Brant Lake have filed cross-motions for summary judgment on the lone remaining issue of coverage for the lost profits award, and all parties agree that there remains no genuine issue of material fact on that issue.

## II. Discussion

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612

---

[2] In the Policy, Coverage A extends to public officials liability and coverage, while Coverage B covers employment practices liability. Brant Lake asserts a claim under Coverage A.

F.3d 676, 679 (8th Cir. 2010) (quoting Cordry v. Vanderbilt Motg. & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006)). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007). When there are cross motions for summary judgment, each party's motion must be evaluated independently in accordance with the standard weight of evidence accorded to the nonmoving party to determine if there is any genuine issue of material fact. See Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983); see also St. Luke's Methodist Hosp. v. Thompson, 182 F. Supp. 2d 765, 769 (N.D. Iowa 2001).

**B. South Dakota Law on Insurance Coverage Issues**

The parties agree that South Dakota law governs in this action under diversity of citizenship jurisdiction, 28 U.S.C. § 1332. Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d 857, 861 (8th Cir. 2012). Interpretation of an insurance policy presents a question of law for the court. Swenson v. State Farm Fire & Cas. Co., 891 F. Supp. 2d 1101, 1107 (D.S.D. 2012). When determining whether a policy provides coverage, courts in South Dakota read the contract as a whole and give unambiguous language its plain and ordinary meaning. Culhane v. W. Nat'l Mut. Ins. Co., 704 N.W.2d 287, 293 (S.D. 2005); Pete Lien & Sons, Inc. v. First Am. Title Ins. Co., 478 N.W.2d 824, 827 (S.D. 1991). If the policy's language is "fairly susceptible to two constructions," an ambiguity

exists, and it will be construed against the insurer. Am. Family Mut. Ins. Co. v. Elliot, 523 N.W.2d 100, 102 (S.D. 1994) (cleaned up). Nevertheless, courts will not create coverage by reading an ambiguity into the plain language of a policy. Culhane, 704 N.W.2d at 293. Instead, courts "consider the policy according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending its operation." Id. (cleaned up). South Dakota law provides that exclusions in an insurance policy are strictly construed, and the insurer bears the burden of showing that the exclusion applies. Owners Ins. Co. v. Tibke Constr., Inc., 901 N.W.2d 80, 83 (S.D. 2017); Novak v. State Farm Mut. Auto. Ins. Co., 293 N.W.2d 452, 455 (S.D. 1980). EMCC can meet that burden by showing that Brant Lake's claim for indemnity "*clearly* falls outside of policy coverage." Owners Ins. Co., 901 N.W.2d at 83 (cleaned up).

### C. Contractual Liability Exclusion

EMCC, bearing the burden under South Dakota law to show an exclusion to coverage applies, invokes Section I.5.d.(2) of the Policy to disclaim coverage for the lost profits award. That policy provision states in relevant part:

This insurance does not apply to:

. . . .

**d. Contractual Liability**

. . .

(2) Failure, refusal, or inability of the insured to enter into, renew or perform any contract or agreement.

Doc. 1-5 at 2–3. EMCC's argument for application of this exclusion is straightforward. After all, the Granite Re performance bond was part of the contract between Excel and Brant Lake, Excel's claims were for breach of contract, and only breach of contract claims were submitted to the jury. Brant Lake's termination of its contract with Excel and claim on the performance bond (according

8

to what the jury found) was a breach of contract, the Policy excludes from coverage Brant Lake's "[f]ailure [or] refusal . . . to . . . perform [the]contract or agreement," so the jury award of $800,000 for Excel's lost profits are part of excluded breach of contract damages. Doc. 47.

The arguments of Brant Lake and Excel against application of the exclusion in Section I.5.d.(2) are more complex. Docs. 43, 61, 63. Brant Lake starts by noting that the language "does not apply to" leading into the exclusionary clause requires a causal connection between the damages and the breach of contract. Doc. 43, 61, 63. To support this commonsense proposition, Brant Lake cites to St. Paul Fire & Marine Insurance Co. v. Thomas, 273 So. 2d 117, 119–20 (Fla. Dist. Ct. App. 1973), and one of the rare cases involving such "does not apply to" language in a policy, Papadell v. Harleysville Mut. Cas. Co., 191 A.2d 274, 275 (Pa. 1963). Brant Lake then notes the distinction between what it calls "performance" (or direct) damages from breach of contract and "consequential" damages that do not directly and immediately flow from injurious acts under South Dakota law. Brant Lake appropriately characterizes the jury's lost profits award to Excel as consequential damages. See Stern Oil Co., Inc. v. Brown, 908 N.W.2d 144, 152 (S.D. 2018); Dakota Style Foods, Inc. v. SunOpta Grains & Foods, Inc., 329 F. Supp. 3d 794, 812 (D.S.D. 2018). Brant Lake compares such a lost profits recovery to a recovery in tort and notes that those lost profits damages occurred after the contract's termination and thus were unforeseeable. Brant Lake believes those characteristics of the lost profits award place it outside the exclusion of Section I.5.d.(2). Docs. 43, 61, 63. Brant Lake relies heavily on Mt. Hawley Ins. Co. v. Slay Engineering, 335 F. Supp. 3d 874 (W.D. Tex. 2018), which found a duty to defend triggered in a construction case involving property damage even though a contract liability

exclusion existed in the policy.[3] Brant Lake of course is appealing issues including the lost profits damage award to the Supreme Court of South Dakota and makes no concession about the proprietary of the award.

Brant Lake's argument accurately states the difference between direct and consequential contract damages under South Dakota law. The direct contract damages awarded to Excel were for retainage and unpaid amounts, while the consequential damages award was the $800,000 of lost profits. Brant Lake characterizes the lost profit award as being akin to an award in tort, but in reality the trial court only submitted to the jury breach of contract claims and instructions on what could be awarded as breach-of-contract damages. Indeed, under South Dakota law, there is no cause of action in tort for breaching a contract. Fisher Sand & Gravel Co. v. S.D. Dep't. of Transp., 558 N.W.2d 864, 868 (S.D. 1997). Based on the instructions the jury received, Excel's lost profits must have been consequential damages flowing from (and causally connected to) Brant Lake's breaching of the contract to be properly awarded by the jury. The lost profits award remains damages from the breach of contract, including Brant Lake choosing to terminate the contract and make a claim on Excel's performance bond which was incorporated into the contract. Section I.5.d.(2) of the Policy is sufficiently broad when given its plain and ordinary meaning to exclude "failure [or] refusal . . . of [Brant Lake] to . . . perform [the] contract or agreement." Under the lead-in clause to the exclusion, EMCC would have "an absolute exclusion with no duty to . . . pay damages." Doc. 1-5 at 2–3. The Policy in turn defines "damages" broadly as "those amounts that the insured becomes legally obligated to pay . . . ." Doc. 1-5 at 7. Nothing in the Policy's Contractual Liability exclusionary language makes coverage turn on whether the damages are

---

[3] The district court in Mt. Hawley eventually reconsidered its decision and held that the contract liability exclusion applied to the claims in the underlying suit and that the insurer therefore had no duty to defend. Mt. Hawley Ins. Co. v. Slay Eng'g, 390 F. Supp. 3d 794, 802 (W.D. Tex. 2019).

consequential, incurred after the date of termination, or difficult to foresee at the time of termination.

Excel's arguments for not applying the exclusionary provision of Section I.5.d.(2) are somewhat different than those of Brant Lake. Excel makes an argument that Section I.5.d.(2) is at a minimum ambiguous such that the exclusion should be construed against EMCC and in favor of coverage. Doc. 58. Excel posits that the jury award for lost profits was (or at least could have been) based on a finding of a breach of the duty of good faith and fair dealing inherent in any contract under South Dakota law. Indeed, the trial court instructed the jury on the law that a breach of contract may be based on "evasion of the spirit of the contract, abuse of power to determine compliance, or interference with or failure to cooperate with the other parties' performance," but that a party remains entitled to enforce the terms that actually appear in the contract. Doc. 1-2 at 18. Excel then cites to Weitzel v. Sioux Valley Heart Partners, 714 N.W.2d 884 (S.D. 2006) for the principle that a "breach of contract is defined as 'a violation of a contractual obligation, either by failing to perform one's own promise or by interfering with another party's performance.'" Id. at 894 (cleaned up) (quoting Black's Law Dictionary 182 (7th ed. 1999)). Excel argues that the Policy exclusion is ambiguous because it does not explicitly exclude coverage for breach of an implied covenant of good faith and fair dealing or for breach by interfering with another party's performance.

Excel's argument, however, neglects that the exclusionary provision at issue extends to "[f]ailure [or] refusal of [Brant Lake] to . . . perform any contract or agreement." Doc. 1-5 at 3. The implied covenant of good faith and fair dealing in South Dakota is part of any contract, including here the contract between Excel and Brant Lake and the Granite Re performance bond made a part of the contract. Schipporeit v. Khan, 775 N.W.2d 503, 505 (S.D. 2009). Moreover,

11

Brant Lake's termination of that contract and claim on Excel's performance bond resulting in the lost profits is as much "failing to perform one's own promise" as it is interfering with Excel's performance, both of which constitute a breach of contract anyway. See Weitzel, 714 N.W.2d at 894. Under a plain and ordinary interpretation, the exclusionary provision at issue is not ambiguous simply because it fails to specifically mention an exclusion for interference with another's performance or a claim under the implied covenant of good faith and fair dealing.

Excel has a slightly different argument than Brant Lake on coverage for lost profits as consequential damages. Excel properly reads Section I.5.d.(1)—excluding coverage for "[a]mounts actually or allegedly due under the terms of a contract"—as excluding "direct" or "performance" damages. Excel then argues that the failure of Section I.5.d.(2) to exclude consequential damages creates an ambiguity. Although creative, this argument does not render the exclusionary language ambiguous. Section I.5.d.(2), in excluding from coverage "[f]ailure, refusal or inability of the insured to enter into, renew or perform any contract or agreement," cannot fairly be read to exclude only performance or direct damages. The exclusionary language of Section I.5.d.(2) indeed does not hinge coverage on the type of damages a jury awards, but rather on the nature of the claim.

Finally, Excel in briefing argued citing City of Fort Pierre v. United Fire & Casualty Co., 463 N.W.2d 845 (S.D. 1990), that "the context of the risks insured" militates for coverage. Doc. 58. In City of Fort Pierre, the Supreme Court of South Dakota held that an insurer had no duty to defend under an errors and omissions policy when the insured city decided to intentionally ignore federal permitting requirements in constructing a roadway in a wetland. Id. at 848. Nothing in City of Fort Pierre suggests that Brant Lake's decision to terminate Excel's contract and make a

claim on Excel's performance bond, and the resulting damages the jury found in breach of contract, are covered under the EMCC policy.

The only reported case that counsel for the parties or this Court located analyzing policy language of this type was this Court's prior Opinion and Order in this case. Doc. 39. As far as cases close to the language of the exclusion, one federal district court equated "'failure to perform' a contract" in an insurance policy with breach of contract. Perdue Farms, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 197 F. Supp. 2d 370, 379 (D. Md. 2002). ("A breach of contract is by definition the failure to perform the contract. No case law supports a contrary conclusion."). The exclusionary language at issue here—"[f]ailure . . . of the insured to . . . perform any contract or agreement"—excludes coverage for breach of contract. All of the damages awarded to Excel were for breach of contract, so the coverage exclusion in Section I.5.d.(2) applies.

This conclusion squares with the very recent decision of the United States Court of Appeals for the Eighth Circuit in Russell v. Liberty Insurance Underwriters, Inc., No. 18-2984, 2020 WL 812910 (8th Cir. Feb. 19, 2020). In Russell, the Eighth Circuit was applying Kansas law to directors and officers coverage that excluded from coverage liability or defense costs "based upon, arising out of, or attributable to any actual or alleged liability under or breach of any contract or agreement." Id. at *4 (cleaned up). The underlying suit stated claims of conversion and breach of fiduciary duty arising out of a "broken promise to pay . . . life-insurance proceeds" to the plaintiff in the underlying action. Id. at *4–5. The Eighth Circuit noted a Kansas Supreme Court case stating, "where the insured's liability [is] premised upon a legal theory separate and distinct from the liability excluded by the policy, the policy provide[s] coverage for that claim." Id. at *5 (alterations in original) (quoting Marquis v. State Farm Fire & Cas. Co., 961 P.2d 1213, 1222

(Kan. 1998)). The Eighth Circuit described the reasoning of Marquis as "disfavor[ed]" and found the exclusion of breach of contract coverage to apply because:

> If Marquis applied to contract-breach exclusions, someone could intentionally obtain the benefit of a breached contract and—depending on the plaintiff's legal theory—force his insurer to carry the burden.

Id. at *5. Brant Lake clearly did not breach the Excel contract as a means of obtaining the benefits thereof while trying to force EMCC to carry the burden. However, the Russell case foreshadows the Eighth Circuit's likely application of EMCC's Contractual Liability Exclusion to the breach of contract damage award to Excel and against Brant Lake.

**III. Conclusion and Order**

In summary, Section I.5.d.(2) of the Policy contains a contractual liability exclusion that, given a plain and ordinary meaning, excludes coverage for the breach of contract damages, including the award of lost profits, that a jury awarded to Excel flowing from Brant Lake's termination of its contract with Excel and demand on Excel's performance bond. The performance bond was part of the contract, after all, and the instructions to the jury submitted only contract claims and damages for breach of contract. Therefore, it is hereby

ORDERED that Brant Lake's motion for summary judgment, Doc. 42, is denied. It is further

ORDERED that EMCC's motion for summary judgment, Doc. 46, is granted.

DATED this 17th day of March, 2020.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

14